UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA TAPLEY,

    Plaintiff,

v.

                                            Case No. 1:15-cv-1181

COMMISSIONER OF SOCIAL
SECURITY,
                                            Hon. Ray Kent

    Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for supplemental security income (SSI).

Plaintiff alleged a disability onset date of November 10, 1991. PageID.175.[1] She identified her disabling conditions as Asperger's, attention deficit hyperactivity disorder (ADHD), anxiety and depression. PageID.179. She completed the 12th grade. PageID.180. At the time plaintiff filed this application for SSI on March 8, 2013, she was working part time in a custodial job at a sheltered workshop. PageID.37, 180.

By way of background, this is plaintiff's second application for benefits. Plaintiff filed the present application for benefits on the same date that she appealed a September 15, 2011

---

[1] The Court notes that plaintiff's brief has incorrectly used the administrative record page numbers as the "PageID" numbers. *See* Administrative Order No. 16-MS-017. For example, the opinion of Ms. Boudah appears at PageID.237-238 but is cited as PageID.209-210, and Dr. Sunde's opinion appears at PageID.351 but is cited as PageID.237-238. *See* Plaintiff's Brief (docket no. 11, PageID.358, 363).

administrative decision denying benefits. This Court addressed that appeal in *Tapley v. Commissioner of Social Security*, 1:13-cv-262, 2014 WL 1052611 (W.D. Mich.) ("*Tapley I*"). In *Tapley I*, the administrative law judge (ALJ) found that plaintiff had the disorders alleged in the present case and that she could perform a range of unskilled light work which included light cleaning (5,000 jobs), packaging (6,500 jobs) and machine operator/tender (8,000 jobs). *Tapley I* (Opinion) (docket no. 15, PageID.552). In an opinion entered on March 18, 2014, the Magistrate Judge affirmed the Commissioner's decision denying benefits. *Id*. (Judgment) (docket no. 16).

In the present case, the ALJ reviewed plaintiff's present claim *de novo* and entered a written decision denying benefits on June 6, 2014. PageID.37-47. At the administrative hearing, plaintiff's counsel advised the ALJ that *Tapley I* was still pending and that they were in the process of deciding whether to appeal. PageID.37.[2] Notably, the ALJ acknowledged that he was not bound by the ALJ's findings in *Tapley I*, stating that "[b]ecause the claimant's previous claim is currently pending before the District Court, the Drummond [*Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir.1997)] and Dennard [*Dennard v. Secretary of Health & Human Services*, 907 F.2d 598 (6th Cir.1990)] decisions were not applied". PageID.45. In this regard, the ALJ was referring to SSA Acquiesence Rulings which arose from the *Drummond* and *Dennard* decisions which state in pertinent part:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a

---

[2] Plaintiff's counsel erroneously reported to the ALJ that "the Magistrate recommended an affirmance and the Judge accepted that over our objection." PageID.76. As discussed, *Tapley I* was decided by a magistrate judge; there was no report and recommendation issued.

2

> finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*See* Acquiesence Rulings 98-3(6) and 98-4(6). *See generally, Gay v. Commissioner of Social Security*, 520 Fed. Appx. 354, 356 (6th Cir. 2013) (*Drummond* and *Dennard* "stand for the principle that when confronted with a second application for benefits, an ALJ is bound by favorable subsidiary findings from the previous determination, unless there is new and material evidence to the contrary"). In reviewing the present claim, the ALJ ultimately concluded that "the overall evidence indicated no new evidence indicating an increase or decrease in the claimant's functioning when compared to the September 15, 2011 findings." PageID.45. The ALJ's decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that

the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of March 8, 2013. PageID.39. At the second step, the ALJ found that plaintiff had severe impairments of: ADHD; Asperger's; generalized anxiety disorder; panic disorder without agoraphobia; depressive disorder, not otherwise specified (NOS); mood disorder; and post traumatic stress disorder (PTSD). *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.40.

The ALJ decided at the fourth step that "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional

5

limitations: limited to simple, routine work tasks involving no constant contact with the public or constant changes in work expectations and work environment." PageID.41. The ALJ also found that plaintiff had no past relevant work. PageID.46.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.46-47. Specifically, the ALJ found that plaintiff could perform unskilled work in the region (defined as the State of Michigan) as follows: assembler (54,000 jobs); visual inspector/sorter (16,000 jobs); and cleaner (14,000 jobs). PageID.46, 75. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since March 8, 2013, the date the application for SSI was filed. PageID.47.

### III.    Discussion

Plaintiff set forth one issue:

**The ALJ's decision improperly weighs the opinions in the file when assessing the residual functional capacity.**

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). With respect to mental abilities, the regulations provide that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering,

and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 416.945(c).

In addressing plaintiff's RFC, the ALJ found that her additional impairments diagnosed since the ALJ's September 15, 2011 decision have not resulted in additional limitations, that she had the same basic limitations and problems as set forth in that decision, and that the prior RFC still applied.  PageID.43.  Plaintiff contends that the RFC determination is not supported by substantial evidence because the ALJ improperly evaluated the underlying opinions of psychiatrist Elizabeth Sunde, M.D., and counselors Lorraine Harper, LMSW, and Andrea Boudah.[3]

### A. Dr. Sunde

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d

---

[3] Defendant's brief does not address plaintiff's stated issue.  Rather, defendant contends that plaintiff's arguments "miss the mark" because, "[p]ursuant to the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the ALJ in this case was required to adopt the prior ALJ's findings 'absent changed circumstances.'"  Defendant's Brief (docket no. 12, PageID.382). Defendant's response seeks to affirm the ALJ's decision denying benefits on a rationale which was not the basis for the ALJ's decision.  As discussed, the ALJ did not apply the *Drummond* decision. PageID.45.

789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The mental RFC assessment at issue was signed by both Ms. Harper and Dr. Sunde. PageID.351-352. By signing the mental RFC, Dr. Sunde adopted the restrictions set forth in that document as her opinions. In that assessment, Dr. Sunde stated that plaintiff has no useful ability to function in the following areas: sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond

appropriately to changes in a routine work setting; and deal with normal work stress. PageID.351. Dr. Sunde explained that plaintiff's anxiety and distractibility affect her work performance, that she has "poor judgment skills," that "her emotions prevent her from rational thought," and that she is unable to concentrate on tasks or conversations if they do not interest her. *Id*. Dr. Sunde also found that plaintiff had no useful ability to function with respect to setting realistic goals, making plans independently of others, or dealing with the stress of semi-skilled or skilled work. *Id*. at PageID.352. For example, if asked to do multiple steps in task completion, plaintiff panics, is afraid to do something wrong, with the result that she "freezes" or does nothing. *Id*.

In addition to the areas in which plaintiff had no useful ability to function, Dr. Sunde also found that plaintiff was unable to meet competitive standards in a number of areas, including maintaining attention for a two hour segment, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, being aware of normal hazards and taking precautions, and maintaining socially appropriate behavior. PageID.352. Dr. Sunde explained one aspect of plaintiff's "poor judgment skills," stating that "[plaintiff] is easily manipulated because she wants to please and be liked but is unable to determine a person's character or integrity if they appeal to her. *Id*.[4]

The ALJ did not evaluate the opinion of Dr. Sunde, other than to refer to the doctor as the co-signer of a counselor's opinion:

---

[4] This Court previously addressed examples of plaintiff's poor judgment. *See Tapley I*, 2014 WL 1052611 at *5 ("The ALJ noted that during the hearing, plaintiff "was also teary when discussing the fact that her ex-boyfriend was on trial for murder and that she had to be a witness for the prosecution in the case" (AR 18). Plaintiff's brief refers to three boyfriends: one who got her pregnant and then moved to Indiana before her psychiatric hospitalization (AR 251); one who murdered a friend (AR 449); and one [who] met her in support meetings (AR 455). Plaintiff's Brief at p. 16.").

On May 5, 2014, Ms. Harper, LMSW, stated that based on the severity of the claimant's mental impairments, the claimant was unable to regulate her emotions and emotionally decompensates when in a stressful situation. She panics and is often unable to proceed with tasks. Her judgment skills and social interests are immature. The claimant has a history of inattentiveness, disorganization, and inability to complete tasks. As a student, she received support services from the school. She currently works between 6-10 hours per week in a supervised setting. Ms. Harper did not foresee the claimant as able to complete work-related activities on a day-to-day basis in a regular work setting (B5F) [Exhibit B5F consists of a letter from Ms. Harper dated May 5, 2014 a Dr. Sunde's mental RFC (PageID.350-352)]. Ms. Harper and Dr. Sunde indicated that the claimant was unable to meet competitive standards in multiple areas regarding mental abilities and aptitude needed to do even unskilled work (B5F/3-4).

Regarding the opinions in Exhibit B5F, in general, more weight is afforded to the opinion of a treating source as the treating source is most often in the best position to provide a detailed, longitudinal picture of the claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings or one time examinations (20 CFR 416.927). If a treating source's medical opinion is well-supported and consistent with the other substantial evidence in the case record, it must be given controlling weight (20 CFR 416.927, SSR 96-2p ). When a treating source opinion is not afforded controlling weight, the following factors will be considered: the length of the treatment relationship and the frequency of treatment, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion, any relevant specialty of the treating source, and other relevant factors (20 CFR 404.1527, 20 CFR 416.927). In the example of Exhibit B5F, Ms.Harper is not an acceptable medical source for such opinion (SSR 06-3p ). The extreme limitations in functioning for unskilled work are not consistent with the claimant's daily activities of working, meeting and making new friends, and caring about friends, relatives and pets. There is no supporting evidence the claimant has been unable to sustain an ordinary routine or work in coordination with or proximity to others without being unduly distracted. To indicate the claimant has no ability to complete a normal workday and workweek without interruptions from psychologically based symptoms is purely speculative since the claimant admits she has never had a full-time job. Furthermore, Ms. Harper has been the claimant's counselor, thus, Dr. Sunde's co-signature would carry more weight had she been the claimant's primary counselor. Therefore, the undersigned gives little weight to the opinions regarding the claimant's ability to function. Finally, neither of these providers are in a position to state the claimant cannot perform any work activity since that is an opinion reserved to the Commissioner (Social Security Ruling 96-5p).

PageID.45.

Here, the ALJ reviewed Dr. Sunde's opinion as that of a treating physician, yet discounted Dr. Sunde's opinion because she was not plaintiff's "primary counselor." The Court does not consider this to be a proper basis for discounting the doctor's opinion. Dr. Sunde is a psychiatrist; she is not a counselor. There is no question that Dr. Sunde was plaintiff's treating psychiatrist and has been for years. *See, e.g., Tapley I*, 2014 WL 1052611 at *4 (citing Dr. Sunde's August 8, 2011 assessment of plaintiff). Based on this record, the ALJ did not provide good reasons for the weight assigned to Dr. Sunde's opinion. *See Wilson*, 378 F.3d at 545. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Sunde's May 5, 2014 opinion.

### B.     Ms. Harper

Unlike Dr. Sunde, the ALJ was not required to provide good reasons for the weight assigned to Ms. Harper's opinion. The requirement that the Commissioner give "good reasons" for the weight given to an opinion applies only to "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007) ("[b]efore determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a 'treating source'"). An "acceptable medical source" refers to one of the sources described in § 416.913(a), i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 416.902 and 416.913(a). As a social worker, Ms. Harper is considered the group of "other" medical sources. *See* 20 C.F.R. §416.913(d)(1) ("other" medical sources include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). *See Payne v.*

11

*Commissioner of Social Security*, 402 Fed. Appx. 109, 118-19 (6th Cir. 2010) ("[a]lthough they may constitute other evidence of the claimant's ability to work, social workers are not acceptable medical sources under Social Security regulations"). Because Ms. Harper is not an acceptable medical source, the ALJ was neither required to give her opinions "complete deference" nor required to meet the "good reason" requirement of § 416.927(d)(2). *See Smith*, 482 F.3d at 876. Nevertheless, pursuant to Social Security Ruling (SSR) 06-3p, opinions from other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06-3p.[5] Here, the ALJ did not provide an evaluation of Ms. Harper's opinions separate from those of Dr. Sunde. Because the May 5, 2014 RFC contained Dr. Sunde's opinion, Ms. Harper's opinions were limited to those as set forth in her May 5, 2014 letter. On remand, the Commissioner should re-evaluate Ms. Harper's opinions.

        **C.**     **Ms. Boudah**

Finally, plaintiff points out that the ALJ's decision did not address the opinions of Ms. Boudah, a rehabilitation counselor at Michigan Rehabilitation Services (MRS). Plaintiff notes that Ms. Boudah reviewed MRS' attempts to help plaintiff obtain and maintain employment and gave some opinions of plaintiff's abilities to perform work related activities, *e.g.*, that plaintiff has worked within a supportive protected environment "never demonstrating the ability to become an independent worker" and that plaintiff "continues to demonstrate the need for 100% supervision, with staff often working with her one-on-one." PageID.238. Ms. Boudah's opinions regarding plaintiff, along with plaintiff's inability to work without supervision, is relevant because it could be

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

work preclusive.  In this regard, the vocational expert (VE) testified that a person limited to performing only simple, repetitive tasks (such as plaintiff) who "also required constant supervision to complete those tasks" would not be able to perform any jobs in the regional economy.  PageID.78. In light of the VE's testimony, and records which indicate that plaintiff was working only 6 to 10 hours per week in a supervised setting (PageID.44, 347), the Commissioner should evaluate Ms. Boudah's opinions on remand.

        **D.**    **RFC**

Finally, if the Commissioner's re-evaluation of the opinions results in a change in the nature or extent of plaintiff's mental limitations, then the Commissioner should adjust plaintiff's RFC accordingly. *See* 20 C.F.R. § 416.945(c) ("we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis").

        **IV.  CONCLUSION**

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate the opinions of Dr. Sunde and Ms. Harper, evaluate Ms. Boudah's opinion, and, if appropriate, adjust plaintiff's RFC.  A judgment consistent with this opinion will be issued forthwith.


Dated: March 22, 2017                            /s/ Ray Kent
                                                                                   RAY KENT
                                                                                   United States Magistrate Judge